## GRIFFITH & BOYD, Respondents, v. WILLIAMS PATENT CRUSHER & PULVERIZER COMPANY, Appellant.

### St. Louis Court of Appeals, December 1, 1903.

PLEADING: Variance Between Pleading and Proof: Pleading Assumpsit and Proving Breach of Warranty. Plaintiffs purchased from defendant certain machinery, with a warranty by defendant that said machinery would perform certain work, and expended large sums of money, under the direction of defendant, in the endeavor to make the machinery do the work it was warranted to do, but it proved unfit for such purpose: *Held*, in a suit to recover the amounts so expended, that plaintiffs could not recover in assumpsit because there was no evidence of an agreement express or implied, by which defendant was to reimburse them, and they could not recover for breach of warranty, because the petition declared on assumpsit.

Appeal from St. Louis City Circuit Court.—*Hon. J. A. Blevins*, Judge.

REVERSED AND REMANDED WITH DIRECTIONS.

*Walther & Muench* for appellant.

(1) An action for money paid by one for another can only be maintained when the payment was made pursuant to a request, express or implied, so that either an express or implied promise to repay can be predicated thereon. 4 Waite's Actions and Defenses, 449; 2 Ency. Pl. and Pr., 1012; Meier v. Meier, 15 Mo. App. 68; Camfield v. Gilbert, 4 Esp. 221; Spurrier v. Elderton, 5 Esp. 3. (2) The law never implies what the parties never intended, and plaintiffs, having had no intention, at the time of making the expenditures, of charging them to defendant, can not recover. Bank v. Aull, 80 Mo. App. 199; Hartnett v. Christopher, 61 Mo. App. 64; Hooley v. Bailey, 30 Mo. App. 585; Kerr v. Cusenbary, 60 Mo. App. 563; Wagner v. Edison El. Co., 82 Mo. App. 299; Hiemenz v. Goerger, 51 Mo. App. 589. (3) The express agreement of the parties in relation to the sale, excludes any implied contract with regard thereto. Intern. Pavement Co. v. Smith, 17 Mo. App. 264; Crowley v. Dunlap, 7 T. R. 565.

*Joseph Wheless* and *F. H. Sullivan* for respondents.

(1) It is not necessary that a plaintiff shall prove all of the averments of his petition; it is sufficient if he proves enough of the material averments to constitute a cause of action. The rest is harmless surplusage. Hartpence v. Rogers, 143 Mo. 632; Campbell v. Railroad, 121 Mo. 348; Radcliffe v. Railroad, 90 Mo. 134; Morrow v. Surber, 97 Mo. 161; State v. Meyers, 99 Mo. 114. (2) Expenses necessarily and legitimately incurred in preparing to carry out a contract and in carrying it out are a proper element of damages for a breach of the contract. Hammond v. Beeson, 112 Mo. 190; Moore v. Mountcastle, 72 Mo. 606; Baseball Ass'n v.

St. L. Ass'n, 67 Mo. App. 653; Hughes v. Robinson, 60 Mo. App. 194; United States v. Behan, 110 U. S. 338; Pond v. Harris, 113 Mass. 114; Williams v. Oliphant, 3 Ind. 272; Allphin v. Working, 24 N. E. 54; Durkee v. Mott, 8 Barb. 423; 1 Sedgwick, Damages, 457, note.

GOODE, J.—Plaintiffs and defendant corporation entered into the following agreement:

"Dec, 2, '98.

"Messrs. Griffith & Boyd, Baltimore, Md.

"Gentlemen: We propose to furnish you f. o. b. cars St. Louis, Mo., one No. 3 Latest Improved Williams Patent Pulverizer for the sum of $750. This mill is guaranteed to grind so as to pass No. 60 mesh sieve eight tons per hour of either Charleston or Tennessee brown phosphate rock or six tons per hour of Peace river pebble; or it will grind to pass No. 20 mesh sieve three and one-half tons per hour of junk bone without preliminary breaking or crushing. We will furnish with the mill two sets of screens and it will be fitted with a Newell perforated pulley and an outboard bearing for the shaft. The speed of the mill will be 1500 rev. per minute. We will furnish this mill on 30 days' trial, subject to above conditions and guaranty. Terms: at the expiration of the trial we will accept a non-interest bearing note for the amount as stated above, maturing August 1, 1899.

"Very truly yours,

"THE WILLIAMS PATENT CRUSHER & PULVERIZER CO.

"By J. W. TIERNEY, Phila., Agt.

"Accepted: GRIFFITH & BOYD."

The mill or machine which was the subject-matter of the foregoing contract, was bought by the plaintiffs from a salesman of the defendant after the examination of a model. Plaintiffs, it should be stated, do business in Baltimore, Maryland, and the defendant is a corpor-

ation with its principal office in St. Louis, Missouri. The mill was shipped to Baltimore shortly after the purchase and was installed on the plaintiffs' premises according to written directions given by the defendant company. It failed to work according to the guaranty and considerable correspondence ensued between the parties respecting it. The defendant directed different things to be done to make it work, which entailed expense in addition to the expense of putting in the foundation and installing the machine. The various items of expense will appear from a portion of the petition to be copied below. All efforts to make the machine comply with the guaranty failed, and plaintiffs claim they never accepted the mill but stood ready to return it to the vendor at any time.

This action was instituted to recover the sum of $2,304.50, which the plaintiffs say they expended in putting in the mill and endeavoring to run it.

The decision of the appeal turns on the nature of the action; hence, it is necessary to examine the petition. That pleading sets out, in substance, the contract between the parties, the sale and purchase of the mill and the guaranty of the defendant concerning what kind of work it would do; that it was furnished on thirty days' trial, at the end of which plaintiffs were to pay for it by notes for $750. After these preliminary statements, the petition proceeds as follows:

"Plaintiffs state that upon receipt of said mill it was duly installed in their place of business according to specific plans and specifications and directions in writing furnished by the defendants; it being necessary owing to the size and character of said machinery, to build and prepare substantial and costly foundations and emplacements for the installation of said machine, according to plans and specifications and directions furnished by the defendant, and entailing a large cost upon plaintiffs.

"Plaintiffs state that said mill failed in every particular to perform the work which it was represented to do; that the said mill for a long time refused to operate at all, and then at the requirement of very much greater horsepower than was represented; and that the mill utterly failed to accomplish the grinding of the fertilizing matter indicated in the capacity represented, or at all; by reason of which said mill failed in the uses for which it was constructed. And plaintiffs state that they at once communicated these facts to the defendant, and the said defendant requested plaintiffs to endeavor to correct the defects and imperfections of said machine and to repair its faults of construction and design, and made many suggestions for alterations and repairs in the machine and its settings and attachments, and requested and directed plaintiffs to make a great many such changes and alterations, for which plaintiffs advanced and expended, at the special instance and request and to the use of the defendant, large sums of money in effecting them, as hereinafter fully set out.

"And plaintiffs state that the president and other representatives of the said defendant company by its repeated statements and assurances to plaintiffs, procured plaintiffs to make all said alterations and repairs and to incur all said expenditures, and said plaintiffs state that they have thus paid out, advanced and expended at the special instance, direction, authorization and request of the defendant company, and to its use and benefit, in the installation, repairs and alterations of said mill, all of which was used and expended under the direction and at the request of defendant, the following several sums of money for the several items of expense so incurred, to-wit: For brick foundation of mill, $124.95; for millwrights and carpenters, $399.11; for ordinary labor, $96; for belts, pulleys, chains, buckets, etc., etc., $659.09; for screen, wire cloth, linen cloth and fans, $307.30; for lumber for elevators, shafting and mill, $428.84; for spec-

ial pulleys, shafting and machinist labor on mill, $377.-71; for pulley coverings, $56.62; for sheet iron piping for dust, $68.10; for hardware, $15.00; for special oils for mill, $22.43; for freight and expressage on mill and repairs, $49.35, making a total of $2,304.50; and an itemized statement of which expenditures is herewith filed as exhibit 'B' and by reason of which the defendant company is liable to repay all such moneys to plaintiffs, as plaintiffs have often demanded of it so to do; and plaintiffs state that all and every one of these items of expense were incurred by the direction, authority and request and to the use and benefit of the said defendant, in the installation, alteration and repair of said mill. Wherefore, plaintiffs demand judgment against the defendant for the sum of $2,304.50, with interest from July 1, 1899, with costs of suit.''

The answer is a general denial.

The testimony introduced by the plaintiffs tended to support the allegations of the petition in regard to the expense incurred in installing the mill, buying machinery to run it, and afterwards different articles and appliances for use in the effort to make it do what was expected of it; that the outlay for labor and articles in attempting to operate the mill was expended in compliance with suggestions by the defendant company as to certain expedients thought necessary to make the mill work satisfactorily.

At the conclusion of plaintiff's testimony the court gave an instruction to the jury in the nature of a demurrer; whereupon plaintiffs took an involuntary nonsuit with leave to move to have it set aside. A motion of that kind was filed and sustained on the ground that the court erred in granting a demurrer to the plaintiff's evidence. The defendant appealed from the order granting a new trial.

The vital question is, whether this is an action for breach of warranty, or assumpsit on an implied agreement by the defendant to reimburse the plaintiffs for

money paid for the benefit of the defendant at its instance and request. If it is an action of the latter sort, the plaintiffs were not entitled to recover; because there was no evidence from which to infer or imply a promise on the part of the defendant to reimburse them for their outlay in installing the machine or making it work well. The testimony was that the defendant made suggestions concerning its operation and that those suggestions were followed, with some expense to plaintiffs. The defendant neither promised to repay the expense nor was expected to do so. Edwin Griffith, one of the plaintiffs, goes far towards setting this matter at rest by his own testimony. He swore: ''We would have considered the money well spent in installing the mill if it had done the work it had been guaranteed to do; and our company expected to bear that expense if the mill had come up to the guaranty.'' Most of the items of expense sued for were incurred in installing the machine: But whether thus incurred or for devices to make it run according to the guaranty, there is nothing to justify the inference that the defendant requested the expenditure of money for its benefit. Part of the outlay was for sheet-iron pipes to carry dust from the mill to the dust bin. Another part was for the purchase of shafting suitable for running the mill, and still another for changes in plaintiffs' plant to make room for the shafting and pulleys needed to operate the mill. After all the expense of installation and changes has been incurred, plaintiffs notified the defendant they would go no further, nor spend any more money on the machine until they were paid what they had already expended. The agent to whom this notice was given, instead of giving a promise to pay plaintiffs what they were out, merely said he would take the matter up with his superiors in Philadelphia. Undoubtedly there is nothing in this case from which the law would imply a promise on the part of the defendant to reimburse plaintiffs their outlay; hence, there can be no recovery on an implied assumpsit. Skeen v. John-

son, 55 Mo. 24; Mansur v. Murphy, 59 Mo. App. 266. This much is practically conceded by the counsel for plaintiffs, who contends the action is not on an implied assumpsit, but is for damages for breach of the contract of sale. That is, we suppose, for breach of the defendant's warranty.

But this contention is in the very teeth of the petition, which pleads that the sums specified were advanced and expended for the special benefit, at the request of, and for the use of the defendant. This averment is reiterated three times and is the gravamen of the petition. It may be allowed that some of the items of expense incurred would constitute part of plaintiffs' recovery of damages in a suit on the warranty; but that this action is of that character can not be allowed without repudiating the language and essence of the petition. The issues tendered bore no relation to a breach of warranty, nor apprised the defendant that plaintiffs complained of such a breach.

It results that the circuit court erred in granting the plaintiffs a new trial. The judgment is, therefore, reversed and the cause remanded with directions to set aside the order granting a new trial and permit plaintiffs to take a nonsuit, or amend, if so advised, on such terms as are just. *Bland, P. J.,* and *Reyburn, J.,* concur.